Mr. Wade. Good afternoon, Your Honors. May it please the Court. Your Honor, Daniel Wade. I represent Total Foot Care on this appeal. This case was tried in front of Judge McNeil. The allegations that were brought were claims of sexual harassment, discrimination, retaliation, as well as originally some state law claims that had been brought against Total Foot Care. Really, the dispositive issue in this appeal is the numerosity requirement under Title VII. You go all the way back to ARBA, which is the U.S. Supreme Court case, which established that this is not a jurisdictional issue. The Fifth Circuit, as well as the U.S. Supreme Court, has established that the numerosity requirement is an essential element of every claim. Now, what happened in this case is we go through the trial. We get to the directed verdict stage, and we move for a directed verdict based upon the fact that the— Let me ask you this. Excuse me, Mr. Counsel, but was there a summary judgment motion? There was a summary judgment based strictly on the— whether or not they met the burdens for harassment, hostile work environment. We didn't file for summary judgment, any other issues, because that was also dispositive. Had that been granted, there would be no reason to raise everything. So this numerosity is not raised on summary judgment? That's correct. Or pretrial dispositive motion. There's some confusion, at least in my mind, maybe nobody else, about the state of the record and where this issue came up, and whether it was, for example—it wasn't listed in the pretrial order, right? That's correct. It was not listed under the contested facts, nor was it under the admitted or stipulated facts. All right, so is it a contested—I assume it would be contested, but is it a contested fact, or is it an issue of law? I mean, in other words, if it was an entitlement to judgment as a matter of law, should it have been in the pretrial order as an unresolved issue, or is it truly a contested fact issue? Well, I would say it very well could be a fact issue or should be a fact issue, because there would be issues, potentially, if you had one. If you had an employee, for example, who testified, well, I only worked there 19 weeks, and there's a record that says they worked there 21 weeks, well, of course, then that would be a disputed fact on how long an employee worked. So your position is that certainly it's not that defendant waived the issue or forfeited the issue by failing to bring it up in the pretrial order? That's correct, Your Honor. And the reason we really get to that point is if you look at these decisions that were even cited by the district court on this issue, district court cited to Fort Bend, which was a U.S. Supreme Court case, that case where they discussed waiver on exhaustion of remedies was a case that had gone up on appeal once, had been reversed back to the district court, before the issue of exhaustion even came into play. And so they said, well, you've had plenty of time to raise this. It's been several years now. It's gone up on appeal. You should have raised this sooner. Therefore, it's waived. This case should have been over in a typical circumstance. This case would have been over a couple of years ago. But because of COVID, it dragged on. Therefore, the fact district court cites the fact it wasn't raised for several years kind of forgets the fact that this trial didn't happen as it was originally planned because of the courts not allowing trials to proceed. The district court says you didn't bring it up in the pretrial order. Therefore, it's waived or forfeited.  That was Judge O'Neill's ruling. All right. And you say that somewhere along the line, the district court agreed with you. The district court said numerosity probably had met here or something to that effect. Yes, Your Honor. He says that. And as I was going back through the transcript, another court ordered the complete transcript. I myself didn't realize there were portions that apparently were not complete in the transcript. My next question is, where is that? Because y'all don't cite it in your briefs. Judge McNeill, well, he also didn't actually touch on it in his ruling. But when he comes to actually rule on the motions, I believe that's the portion that's in the brief or in his—from the— We have a rule, counsel, that says every assertion in the briefs regarding matter in the record must be supported by a reference to the page where it's found. Yes, Your Honor. You know that rule? Yes, Your Honor. So I'm going to go through your brief because you say, just as Judge Wilson's asking, that Judge McNeill found that plaintiff's numerosity proof was insufficient. It's the first sentence of your brief, page 4. Quote, the district court agreed plaintiffs failed to show that TFC met the numerosity requirement. No record cite. No record cite. Yes, Your Honor. But you're required to have a record cite. Okay. Next page, page 5. The court did correctly note the plaintiffs had indeed failed to establish their burden of proof on the issue. Page 5, no record cite. Page 7, say the same thing. Reply brief, page 2, say the same thing. Next paragraph, the district court found clearly and unequivocally that, so much so you fault them for not cross appealing. But because you didn't ever comply with our rules to give a record cite, I had to go through four volumes of pleadings, and I don't find that anywhere. So this is your opportunity right now to give an exact record cite for where the district court clearly and unequivocally said it was undisputed that the plaintiffs failed with numerosity. What's your record cite? Until the rest of the transcript was presented, I believe it has not been resubmitted by the court reporter from that. Okay. So why don't you lose the case right there? You haven't given a record cite. You didn't order the record. You're just saying maybe it's there. No, Your Honor. There's no maybe to it. It was said multiple times. And we filed our motion. Okay. Then if you say it was said multiple times, when I'm looking at the district court's denial of the Rule 50 motion, where the district court does say it was waived, before that the court says it was regardless waived, but explicitly says, yes, there was sufficient numerosity. They cite the photograph. They cite the EEOC complaints. The only time he cites that is to the number of employees on a single day, which it does show there were 20 employees on a single day in time. He cites the photograph. Judge McNeil, before he says it's waived, says, yes, in the light most favorable to them, I found there was sufficient proof of numerosity. Now, what you're saying is, well, he didn't actually say anything about time. That's what you're saying now. That's correct, Your Honor. But in your briefs without record cites, you say clearly and unequivocally he said it was undisputed. He did. But in Rule 50, in his ruling, he specifically said the opposite. Well, Your Honor, I believe that's incorrect, Your Honor. So what's your record cite for that repeated six different times that it was undisputed and he found it? You have no record cite yet. Is that correct? That's correct because the entire transcript was not where Judge McNeil actually makes those statements, is not in the record, and the record will be completed. You have a firsthand recollection of a moment where he said the opposite of what he wrote in the decision? That's correct, Your Honor. Okay, so tell us about that firsthand recollection of yours. Where will it come out? It will come out when he issues the rulings in the sections where he's discussing our arguments. In fact, I believe it was in response to a question or a statement being made by opposing counsel regarding whether or not they had employees who worked the requisite amount of time. And I believe his statement was something to the effect of you did not show how long they worked. The only thing you have is the photograph. In fact, he questions opposing counsel is all you have is the photograph from a single date. Three of the four plaintiffs testified they worked more than 36 weeks. That's correct, Your Honor. One plaintiff did not work the requisite amount. Okay, so why can't a jury infer the time right there from that? Why couldn't a jury fairly make that inference? Because it requires more than four employees or three employees. Well, but we've seen in the photo they're 20. That's correct. But there's no evidence at all as to how long they worked beyond a day. And we weren't allowed to present anything further than that. Judge McNeil ruled we had waived the issue by failing to identify it in the pretrial order. However, every case that talks about waiver talks about the fact that I'm not concerned about waiver. I think your brief is flagrantly in violation of a rule that we require every proposition to be cited. If you can't have a record to support a proposition you make, you better make sure you order it. I mean, you may have no answer. I'm not saying I'm persuasive of my colleagues, but I can't understand a brief that makes statements like that suggesting they should have cross-appealed a ruling and you can't point to a record site for it. I understand, Your Honor. And that was an issue that we did not realize until later on, that the entire transcripts weren't there. You realized and then you ordered or the court ordered? Well, the court ordered. But at that point, Your Honor, we've got the orders from the court denying the directed verdict where there is no evidence in the record. And so even beyond what Judge McNeil states, there's not one iota of testimony to support how long beyond three plaintiffs who worked for more than the requisite amount of time. So there is no evidence in the record as beyond three employees or technically Dr. Zaleski. That's a very different statement than the court found that there was no evidence. I understand, Your Honor. But in any event, there is no record evidence of that. And Judge McNeil states it. It will be in the completed transcripts, all I can tell you, Your Honor, at this moment. Because it was brought up more than once. And, in fact, the statements have been made and the opposing counsel's brief talks about proving numerosity, but there's no evidence beyond the photograph for a single date and time. That's the only evidence in the record. Well, but you've got Dr. Zaleski who said they had these clinics all over South Mississippi and, you know, there was no evidence that the business was collapsing or not growing or those kinds of things. I mean, is, again, in the light most favorable to the verdict, are not these guideposts enough to get you there in terms of allowing the jury to infer that numerosity is met? You've got the picture with 20 people in it. You've got the plaintiffs saying people were coming and going in terms of employees. Three of the plaintiffs were there long enough to meet it. That's three. I grant you that's not 15. But in the light most favorable to the verdict, is the evidence not sufficient? Well, there's no evidence regarding any other employees, how long they worked, how many days they worked. They all rotated. The plaintiffs testified they rotated to all these.  Those plaintiffs did rotate between those clinics. But, again, there has to be some evidence to support that everybody in the photograph worked more than the day the photograph was taken. Nobody talked about any of the other employees working beyond the day the photograph was taken. And so there is, other than three plaintiffs, there is no evidence of any other employee working beyond that one day. Which is, and that's why we didn't go too far into that. There's no evidence of any other employees working. Same way opposing counsel had the opportunity to present, well, here's where we know these other employees worked. Had other employees even testified at trial regarding their tenures at Total Foot Care, there would have been evidence, perhaps, of other employees working beyond that requisite amount of time. But it's just not there. And that's what the basis of our motion on the waiver is. I don't believe you can waive that. And I believe if Judge McNeil had found that it was a question of fact, there would be no issue, no reason to say it was waived. All he had to do was say, it's a fact issue. Had he not said it's waived, there's no reason to go into waiver otherwise. If he said it was waived, though, why in the world wouldn't he have granted the motion? Because he said it was waived. Therefore, we couldn't put it forward. Well, I guess if he said that numerosity wasn't met, I don't know. It just seems, I guess we'll see what the record says at some point in time. Yes, and I agree, Your Honor. But, again, there is no evidence in the record beyond that. Again, I think if he didn't have to get to waiver if it was a fact issue. And I don't know, what does it matter if he said that numerosity wasn't met at some point in passing or he asked counsel opposite about it, if he came down with a ruling saying after the jury verdict that it was met, that the evidence was sufficient to go to the jury? That's what we travel on, right? Well, I know that's what it says in this order right here. I don't think that's what it means, though. The fact that he only addresses the photograph having those people on one day out, I think the order is actually being taken a little further than what it says. Oh, but he denied the motion for judgment as a matter of law. Because of waiver. He says regardless because of waiver. Correct. But there's no reason to address, if there's a fact issue, there's no issue to even address the waiver. Well, it was a huge issue in the motion hearing. The opposing counsel jumped up and said this was a huge ambush. The case had been languishing for three years with COVID. It could have been in the summary judgment. It was the entire heated debate. So it was squarely in front of him. He's listening. He's saying what's authority on waiver? So it doesn't surprise me he took a stab at waiver. I agree, Your Honor. He took a lot of time to do that, but the entire focus of the research was waiver. Everything was based upon waiver. After all the argument was made, he requested additional briefing. We sent e-mails to the court that evening regarding waiver. That was all requested by Judge McNeil. But in my remaining time, real quick, I did want to touch on two other issues. The motions to sever that were denied. I think the biggest issue here is, and I know there's a case that Judge McNeil refers to as being very similar, Alanez or Alaneez is how it's spelled. That case, however, involved multiple plaintiffs that were all in one case. However, they had corroborating testimony from non-plaintiffs. This case revolved around four plaintiffs who all worked together during a short period of time. At least two of them testified they had no intention to even bring suit or weren't considering suit until they were sought out by another plaintiff. Therefore, the jury was left to assume whether there's smoke, there's fire in this circumstance. There was no real way to combat four different people, and I would say the cases were so weak, as a matter of fact, compared to some of the impeachment evidence that was there, that one of the plaintiffs was found not to have been sexually harassed because it was just so weak. So weak the defendant, Dr. Zaleski, admitted to a lot of this conduct. He admitted to hugging his employees from the side on an often basis without ever having to complain, and a forehead kiss for Darshawn Young in a moment that she was upset and he just didn't know what to do. He admitted to conduct maybe according to his version of events, but it substantially corroborated what the plaintiffs said in terms of their version of events. Well, there's a difference between a sexual harassing type hug where someone walks up and hugs you on the side versus the – I think Dena Myers talked about one or two hugs, and they all talked about hugs they just didn't like because they were tight hugs. They're different versions. Well, but some of the plaintiffs saw the alleged conduct that was perpetrated on some of the other plaintiffs. In other words, all this was intertwined with each other. Well, that's incorrect, Your Honor. In fact, if I may, just to touch on that one, each plaintiff only had one sentence, if any. Angela Russell never talks about Dena Myers and only makes a single comment about seeing Darshawn Young be hugged. That's out of 175 pages of testimony. Darshawn Young never talks about Dena Myers or Hope Landing, talks about one event that was admitted to regarding Angela Russell, Hope Landing, never talks about Dena Myers. Dena Myers never talks about another plaintiff at all. You have rebuttal time. Thank you, Your Honor. Ms. Robinson. May I please court, Your Honor? Judge, the court, the order of the court, the first issue we're going to have is that Mr. Wade failed to bring any of this in the pretrial. Mr. Wade filed several motions. We worked through COVID, paper transactionally, when COVID was going on. We were actively participating in this case. Mr. Wade had ample time, the defendants, to file the numerosity issue. It is in the record. Each one of the plaintiffs said how long they've been there, talked about other employees that have been there, and as the court so noted, the picture shows 20 all females. No, there were male doctors, but all female nurses or other staff that were employed there. That's one point in time. That's literally a snapshot in time. Where's the evidence that shows that there were 15 employees for any 20-week period the year of the allegations or the year before? Thank you, Your Honor. Dr. Zaleski himself's testimony is in the record that he had the employees. Additionally, Your Honor, we filed, I believe it's document 392, there was a five-day trial on sexual harassment in the negative workplace environment, and I believe it was on day four when we got back to our offices in Jackson. We filed, as the court likely knows, the United States EEOC causes employers who have over 15 employees that they have to report to the EEOC. My firm doesn't have two or three employees, so we don't have to do any reporting. We attached exhibits specifically to Dr. Zaleski, Total Foot Care, that it asked them to respond to these allegations. Now, Judge, if one of my employees say that I have sexual harassed them or hostile work environment, if they go to the EEOC, then the EEOC won't send me anything because I don't meet the numerosity requirement. So it is already in the record in the district court, the day of trial, I believe it was day four, where we filed the letter from the EEOC addressed, Your Honor, to Dr. Zaleski, Total Foot Care, to report on the allegations where my clients filed for the sexual harassment hostile work environment. That aids the proof that, and we didn't even bring that up in trial. We didn't have to. You're saying the letter from the EEOC is evidence that they had the requisite number of employees for the requisite amount of time? Absolutely, Your Honor. Does the letter say that? Absolutely, Your Honor. Now, don't let me say the letter says that, Your Honor, but what we're saying to the court is that we submitted the letter as an exhibit along with the EEOC. Anyone can go on the website of the EEOC. Their requirements for an employer in the United States with over X number of employees must submit these sort of records. That's why they contacted Dr. Zaleski. And that's one of the exhibits the district court cited? Yes, Your Honor. But that does go to number of employees, not directly to time? To time. Your Honor, on the record, Mr. Wade did not order the entire record, and I saw the e-mail this first time I came before this court, so I wasn't sure what all I could bring, and I knew I only had 20 minutes. The record reflects that the plaintiffs stated that they all had been there since 2018, the lawsuit wasn't filed until 2019, and there's records stating of the other women, yeah, women, actually, who had been there that met this requirement. And again, Dr. Zaleski himself, Judge, testified under oath that that record is there, Judge. So do we need to stay on that or do I go? But what did he say? I don't remember anything in his testimony, you know it better than I do, where he said we had 15 employees for 20 weeks. Judge, after it was objected to, we presented, I think the exhibit is Why All Nine, the same exhibit was also provided by defense, and I asked in front of the jury, because we had them all blown up, the pictures blown up so there would be no confusion, how many people in the picture? So Mr. Wade objects, and his objection was, well, that doesn't say the period of time that they were there. You're talking about the photograph? The photograph, yes. No, but it doesn't. It does not. It could be a reunion of employees who gathered together for lunch. We don't know, do we? Your Honor, but the question was asked, and I don't want to give the court what page or what have you that is in there. If he had 20 employees, he said yes, Your Honor. Again, this trial was January this year, I believe. And if the court will reflect, the jury got to hear, and we went through a couple of jurors who had to go out with COVID, but they had an opportunity to dispel this numerosity. This came up day four, even after they brought it up saying that here we got it,  even after they ambushed us. His witness, the doctor himself, still pointed to 20 employees who were there. When was this person there? We didn't go one, two, three, whatever, because as I told Judge McNeil, we don't have time to go. We couldn't have been prepared for that. He didn't object to it at the pretrial. I think that's the burden of showing that. In other words, it's an element of the claim. Yes, Your Honor. You don't show the element of the claim, you lose. Yes, Your Honor. And we showed the element of the claim. And we showed it not just with the picture. We did it also with Dr. Zaleski's testimony. Dr. Zaleski didn't say anything different. Even if you see the transcript, I'm implying and saying these 20 women worked there. There was no talk of a reunion. And, in fact, I got ambushed or the plaintiffs got ambushed. He didn't say for how long he'd had 20 employees, any duration. We said 2018 for each one of them. The ones in the picture, Your Honor. We're only talking about the ones in the picture. So they were there at the time of the alleged harassment? That's what I'm trying to say, Your Honor. But were they there for 20 weeks leading up to it or during that year? Yes, Your Honor. If the court would do again, if the court would reflect the record, we asked the question. With the limited time we had on day five, this matter was about to go to the jury. No jury question included numerosity. So if anyone was prejudiced, it was the plaintiffs. But even in that prejudicial state, Judge, we still addressed the numerosity. You've got Dr. Z's testimony. You've got this photograph showing 20 people. What else is in the record that shows the duration of employees and employment? Judge, if I had to say that now for, again, the limited time that we had, my asking, me bringing it out in the questions that I was asking Dr. Zaleski regarding the employees, Dr. Zaleski was under direct. His lawyer brought up most of it. And we had another situation where we were ambushed, which brings to my attention, because the court just mentioned how you know it wasn't a reunion. Mr. Wade came in. We were told, I was told not to speak of alcohol, judges. I'm going to get this out real quick so I can make sure I'm making the point. There was a party or gathering at a Mexican restaurant. I did not get anything in the pretrial showing a picture of one of the plaintiffs holding an alcohol beverage. As soon as Mr. Wade comes in with the alcohol beverage, there again, there's a testimony that there were a group, a large group of his employees, saying folks from that picture at another occasion, judge, at another occasion. So that would make three. And there again, we didn't even get more able to prepare to argue against it because it was an ambush. So we just took what we had. When you say it was an ambush, I'm not sure I follow. You have the burden of proof to show that you had, that the defendant had at least 15 employees for 20 weeks. And we proved 20 employees, judge, in the testimony of Dr. Zaleski himself, that those were all his employees and for how long. But again, judge, that burden, we felt like we met. There was no instructions to the jury to consider this numerosity. And we felt like we met it again. Dr. Zaleski admitted it on the witness stand, judge. And the plaintiffs themselves spoke of Alicia. There are different names in that record. More Megan, I believe. When was Megan there? Was Megan there? This person saw him kiss me. Darshon, see Dr. Zaleski with one of the plaintiffs, Angela Tate on his back with her bottom in his face. He like his back rubbed. He's admitting that he picked her. Judge, we did the numerosity with the short span or the ambush that was brought in. When you use the word ambush, I think really, I take it, correct me if I'm wrong, you mean the district court's finding that it was waived. So instead of ambush, parties and trials will get adversarial to each other. You mean that over three years of pretrial prep, they never pointed that out. It wasn't listed in the pretrial stipulation of disputed fact. They never bring it up in the trial. They don't even ask the jury's attention to be brought to it. But it is still an element you have to prove. You accept that burden. Yes, sir. And you're arguing that the jury, like Judge McNeil found, the jury had sufficient proof to draw the inference that it was more than 15 for more than the amount of time. That's your argument. Yes, sir. When you say ambush, that's sort of a, you know, it was clearly both sides were impassioned at each other. I just want to clarify, so on the one hand, you are defending the district court's finding of waiver. That's a little hard for me to understand. I think I know the record to know if there's enough to have the jury to have made the finding. Yeah, there's no question there. Yes, Your Honor. I'm sorry. No, no, no. You don't need to apologize. I take it you accept that you had the burden of proof on this element, whether it comes up late in the game or not. Yes, Your Honor. We're also saying that we believe we've shown that the proof, the evidence, Judge. Now, even though I read the district's order to say, yes, you did have enough to support the verdict, opposing counsel is saying somewhere in a record that may show up, the district court actually said the opposite. Do you have any recollection of that? No, Your Honor. Okay, now in your response brief where you did point to evidence from which a jury could infer it, you gave record sites, correct? Yes, Your Honor. And then when they filed the reply brief again, pages two to five, they give not a single record site. No, Your Honor, and we even mentioned that to the court in our rebuttal that they are not citing any case law or citing anything that we can reference. Only thing we had was Mr. Wade, the attorney, just saying a conclusion that wasn't there. But the district court, Judge, that was my first trial in five days. Folks going through COVID, we're having to be real careful. Mr. Wade himself said, it's in the record. I had a case just like this before Judge Satin with numerosity. He said it was his case.  If the case rests, you can ask to reopen. And he didn't do it even when we rested. You could have asked to reopen. Your Honor, that's because we, yes, Your Honor, but we felt like we had proven the numerosity. Okay, thank you, counsel. Do you have anything else you want to add? I'm not hurrying you. I don't know if there's anything, do we need to talk about the other motions? He filed a motion for severance, but if I need to speak on that or if I'm out of time? You're definitely not out of time. It's totally your prerogative. If you think your brief sufficiently answered it, you don't have to repeat your brief. The brief certainly answers it, Your Honor. The brief answers the mistrial as well. The elements to the mistrial, the elements for severance, they're just not in this case. And we cited the law. We will have rebuttal time now. You understand that?  May I sit down? You may sit down. Thank you, Judge. In your reply brief, it's something I hadn't read to you. After they do give record cites in their brief responding as to numerosity, you respond to their record cites pages 2 to 5. Did you give a single record cite anywhere in any of those pages? In the reply brief? In the reply brief. I believe so, Your Honor. How is that possibly in compliance with our rules? Your Honor, our response is where we go through, we cite to the record several times. And in the reply, I was simply just basically rehashing or re-urging things we'd already said. There wasn't any specific thing to respond to because the argument has always been from the other side, even in front of Judge McNeil, was that we had 20 employees, and that's never been disputed. The dispute arises on longevity. And I would even point to Judge McNeil's order on page record 2854 where Your Honor says he found that a jury could infer. Actually, in that paragraph, the only thing that Judge McNeil says in his order is a reasonable jury or given every reasonable inference of the plaintiffs, that total foot care had 15 or more employees. He never references longevity when he talks about the inferences, to be clear. He speaks about numerosity. He does in the first two lines of that paragraph. But then when he talks about inferences, he only talks about the total foot care had 15 or more employees. Okay, and that is your support that he clearly and unequivocally found that it was undisputed. That means the opposing party didn't dispute it. That's your support? Yes. That he didn't mention longevity? Well, in the order, no. He says reasonable inferences regarding the number of employees only. No discussion about reasonable inferences regarding longevity. What he meant was everyone should know he'd found the opposite. That's what you're saying? Well, he said it very clearly from the bench, Your Honor. It will be in the transcript, I have no doubt. Once Mr. Jeske has submitted it, I'll be sure to 28J and be sure to point out the times in which he said it. But where does that leave us, though? I mean, if he said something like that from the bench but then he wrote what he wrote in his orders, what are we to go on? We go by his written and entered orders, do we not? The written order only references reasonable inferences regarding 15 or more employees. That's what the order says on 2854 in the record. At least in the light most favorable to plaintiffs and giving every reasonable inference to the plaintiffs, that total foot carry had 15 or more employees, period. He never discussed his longevity regarding reasonable inferences. He then goes into waiver in the next paragraph. And, again, we talk about this waiver issue. So when he finds that we waived it during trial, we don't have an opportunity at that point to even try to make it a jury issue for them to decide because at that point Judge McNeil has held it's been waived. So if it's reasonable inferences, he could have simply denied it on that, not gone on to waiver and simply said, well, let the jury decide, present the jury instructions. He doesn't allow it. It's waived at that point, was the court's ruling. So if we're only talking about if he found a reasonable inference, which I suggest he did not, then we would have been allowed to present it to the jury, which we did not because we were not. He found it to be waived. So that's what I'm trying to do. I know the order isn't in that one paragraph. Again, it only talks about 15 or more employees. He never talks about longevity other than stating the law in the first two sentences. And then we spend the rest of the order just simply discussing waiver. If there were reasonable inferences to be made in favor of the plaintiff there, the waiver argument is no point discussing at that point. But that is probably a third of the order is waiver. So that's why I think that's very important to look at. Again, we have the one photograph. I don't have a whole lot more to touch on on the waiver issue other than to say every case where it is discussed. In the pretrial order where I think Judge McNeil talks about Swift v. State Farm, which is a Fifth Circuit case. However, when we talk about waiver in that case, the plaintiff, it was admitted that coverage under the policy was not contested, so therefore they were disallowed from arguing about U.M. status because coverage was admitted to. All of those are distinguishable. Same way with his discussion on the case of the D.C. Circuit. I was trying to make sure I get that case. Let's see. In that case, again, that was a case in which the other side had stated in the pretrial order that the landowners had control over the property, and the defendant did not speak up in the pretrial order to contest what the plaintiffs had put in the order. Those are distinguishable. The biggest argument we have here is, Your Honor, I guess there's nothing in the record to show how long any of these employees worked there. We still believe that severance was appropriate because it was just four plaintiffs were the only people testifying, and I'll let the mistrial section just stand on the brief, Your Honor. Thank you. The case is submitted. That concludes today's hearing.